UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC L. LEWIS,<br><br>    *Plaintiff*,<br><br>    v.<br><br>U.S. DEPARTMENT OF THE TREASURY, *et al*.,<br><br>    *Defendants*. | No. 17-cv-0943 (DLF) |

**MEMORANDUM OPINION**

    Eric L. Lewis brings this action against the U.S. Department of Treasury and Financial Crimes Enforcement Network (FinCEN), a bureau within the Department of Treasury, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Before the Court are the defendants' second Motion for Summary Judgment, Dkt. 36, and Lewis's second Cross Motion for Summary Judgment, Dkt. 37. For the reasons that follow, the Court will grant FinCEN's motion and deny Lewis's cross motion.

**I.    BACKGROUND**

    The plaintiff, Eric L. Lewis, is an attorney who previously represented shareholders of Banca Privada d'Andorra S.A. (BPA), an Andorran bank, in a lawsuit against the defendant, FinCEN. *See* Defs.' Statement of Material Facts As to Which There is No Genuine Dispute ¶ 3 (Defs.' Statement of Facts), Dkt. 36-3; Pl.'s Statement of Material Facts As to Which There is No Genuine Dispute ¶ 3 (Pl.'s Statement of Facts), Dkt. 37-2; Compl. ¶ 12, Dkt. 1. In that suit, the BPA shareholders sued FinCEN over a rulemaking action in which it imposed an anti-money laundering measure against the bank. Defs.' Statement of Facts ¶ 3. On July 19, 2016, Lewis

submitted a FOIA request to FinCEN, seeking documents related to the rulemaking. *See id*. ¶ 4; Compl. ¶ 12. Specifically, Lewis sought "[a]ny and all forms of communication, including but not limited to emails, letters, and facsimiles, between FinCEN and any department or division of the Government of Andorra and/or communications within FinCEN or with any other U.S. agency or with any department or division of the Government of Spain," regarding fifteen named individuals. Defs.' Statement of Facts at ¶ 2.

FinCEN initially identified 528 pages of responsive documents, releasing six of those pages in redacted form and withholding in full the remaining 522 pages. *See* First El-Hindi Decl. ¶¶ 3, Dkt. 16-5; Pl.'s Statement of Facts ¶ 31–32. In September 2017, FinCEN filed a motion for summary judgment, and Lewis filed a cross motion for summary judgment that challenged the adequacy of FinCEN's search and its invocation of Exemptions 3, 5, 7(A), 7(D) and 7(E). *See* Dkts. 16, 17. The Court denied both motions, holding that FinCEN had not supplied enough information to allow the Court to determine whether the search was adequate or whether FinCEN properly invoked the two exemptions. *See* Mem. Op. & Order at 2, Dkt. 23.

FinCEN then conducted two new searches for the requested records and ultimately identified 1,399 potentially responsive records. *See* Third El-Hindi Decl. ¶¶ 3, 9, Dkt. 36-2. It withheld 902 pages in full and 61 pages in part. *Id*. ¶ 98. FinCEN filed a renewed motion for summary judgment on April 18, 2019 and Lewis filed a renewed cross motion for summary judgment on May 20, 2019. In support of its motion, FinCEN submitted: two declarations from FinCEN's Deputy Director Jamal El-Hindi, *see* Third El-Hindi Decl.; Fourth El-Hindi Decl., Dkt. 39-1; a *Vaughn* Index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); Third El-Hindi Decl. Ex. 1, Dkt. 36-2, and (3) an Amended *Vaughn* Index, *see* Fourth El-Hindi Decl. Ex. 1, Dkt.

39-1.[1] In his renewed cross motion, Lewis no longer challenges the adequacy of the search, and instead contests FinCEN's invocation of Exemptions 5, 7(A) and 7(D).[2] *See* Pl.'s Br. at 9, 31.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, all facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted). "The system of disclosure established by the FOIA is simple in theory[:] [a] federal agency must disclose agency records unless they may be

---

[1] FinCEN submitted an Amended *Vaughn* Index because the first *Vaughn* Index inadvertently contained several errors. *See* Fourth El-Hindi Decl. ¶ 5. The Amended *Vaughn* Index updated sections 7, 12, 24, 25, 26, 29, 30, 34 and 36 to ensure that documents have the correct categorical explanation for withholding, to remove duplicate listings of documents, and to provide information previously omitted. *Id*. ¶ 9.

[2] FinCEN also invoked Exemptions 3, 4, 6, and 7(C) to withhold responsive documents in part and Exemptions 7(C) and 7(E) to withhold documents in full. *See Vaughn* Index; Third El-Hindi Decl. Lewis does not challenge the withholdings under Exemptions 3, 4, 6 or 7(C), *see* Pl.'s Br.; Pl.'s Reply at 18, and he only challenges the FinCEN's decision to withhold records under Exemption 7(E) in full, *see* Pl.'s Br. at 14 n. 7. He therefore concedes that FinCEN's withholdings under Exemption 7(C) and FinCEN's redactions under Exemptions 3, 4, 6, and 7(E) are proper. *Hopkins v. Women's Div.*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." *DOJ v. Julian*, 486 U.S. 1, 8 (1988). The agency bears the burden of justifying the application of any exemptions, "which are exclusive and must be narrowly construed." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015).

Federal courts rely on agency affidavits to determine whether an agency complied with FOIA. *Perry*, 684 F.2d. at 126. Agency affidavits are entitled to a presumption of good faith, *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and is not called into question by contradictory record evidence or evidence of bad faith, *Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). It is well established that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.  ANALYSIS

### A.  Exemption 7

Exemption 7 permits an agency to withhold "records or information compiled for law enforcement purposes" if disclosure could reasonably be expected to cause a certain set of harms. 5 U.S.C. § 552(b)(7). An agency must therefore "as a preliminary matter make a threshold showing demonstrating that the records were compiled for a law enforcement purpose." *Pinson v. DOJ*, 245 F. Supp. 3d 225, 249 (D.D.C. 2017) (internal quotation marks omitted).

#### 1.  *Exemption 7 Threshold Inquiry*

Documents are compiled for "law enforcement purposes" if "the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a

rational nexus between the investigation at issue and the agency's law enforcement duties." *Judicial Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 24 (D.C. Cir. 2003) (internal quotation marks omitted). This depends on "how and under what circumstances the requested files were compiled" and "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (internal quotation marks omitted). "Law enforcement purposes" can concern both civil and criminal matters. *Tax Analysts v. IRS,* 294 F.3d 71, 77 (D.C. Cir. 2002). While agencies whose primary function involves law enforcement may be afforded deference, the exemption also applies to agencies "with both law enforcement and administrative functions," such as the IRS. *Id*. The ordinary understanding of "law enforcement" includes the "proactive steps designed to prevent criminal activity and to maintain security." *Public Emps. for Envtl. Responsibility (PEER) v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring)).

FinCEN has established that the withheld documents were compiled for law enforcement purposes because all of the documents relate to investigations into BPA's alleged money laundering by FinCEN and other government agencies. FinCEN's role includes "support[ing] government initiatives against money laundering," 31 U.S.C. § 310(b)(2)(C), and it has the authority to enforce the Bank Secrecy Act and Section 311 of the USA PATRIOT Act, *see* Treasury Order 180-01 (July 1, 2014). FinCEN's statutory duties also involve facilitating investigations conducted by foreign governments through mandates such as "[c]oordinat[ing] with financial intelligence units in other countries on anti-terrorism and anti-money laundering initiatives, and similar efforts," *id*. § 310(b)(2)(H), and "[f]urnish[ing] research, analytical and information services to . . . foreign law enforcement authorities . . . in the interest of detection,

5

prevention, and prosecution of terrorism, organized crime, money laundering, and other financial crimes," *id*. § 310(b)(2)(E).

According to El-Hindi, FinCEN generated the records at issue to "(1) support FinCEN's own investigations and actions to enforce statutes that FinCEN administers, (2) facilitate law enforcement agencies' investigation of financial or other crimes, and (3) cooperate with foreign government agencies in furtherance of foreign or domestic law enforcement investigations or actions." Third El-Hindi Decl. ¶ 15. FinCEN's assertion that the records were created for various investigations—either its own enforcement actions or criminal actions in other jurisdictions—establishes a "rational nexus" between its basis for compiling the records and its statutory law enforcement duties. FinCEN's own Section 311 action against BPA involved an anti-money laundering measure, making it a "proactive step[] designed to prevent criminal activity and to maintain security," and therefore a law enforcement proceeding. *See PEER*, 740 F.3d at 203. Further, Exemption 7 applies not only to domestic law enforcement purposes, but also to foreign law enforcement purposes. *See Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986). Information that FinCEN gathered to aid foreign law enforcement therefore still falls under the threshold inquiry because a connection exists between this information and FinCEN's statutory law enforcement duties.

While FinCEN is indeed a "mixed function agency," *see* Pl.'s Br. 10–11, agencies that have both civil and criminal enforcement duties still can invoke Exemption 7 as long as they compiled the records for law enforcement purposes. *PEER*, 740 F.3d at 203 (noting that "the withheld record must have been compiled for law enforcement *purposes*," but "the withholding agency need not have statutory law enforcement *functions*" (emphasis in original)). And contrary to Lewis' suggestion, FinCEN need not identify a particular individual or incident as the

6

object of its investigation.  *See* Pl.'s Br. at 10, 12–13.  A prior version of Exemption 7 required a threshold showing that the withheld materials be "investigatory records compiled for law enforcement purposes," but Congress amended Exemption 7 in 1986 to remove the "investigatory" requirement.  *See Tax Analysts*, 294 F.3d at 79.  Under the amended version, an agency can invoke Exemption 7 for internal agency materials "relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation."  *Id*.  Accordingly, FinCEN has met the necessary threshold showing for Exemption 7.

        2.      *Exemption 7(A)*

Once the threshold inquiry of Exemption 7 is satisfied, an agency may withhold documents under Exemption 7(A) if their disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A); *see, e.g. Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 928 (D.C. Cir. 2003) (finding reasonable expectation of interference when releasing documents could enable subjects of investigation "to better evade the ongoing investigation and more easily formulate or revise counter-efforts").  An agency may invoke Exemption 7(A) only if an enforcement proceeding is either "reasonably anticipated," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007), or "pending at the time of [a court's] decision, not only at the time of the initial FOIA request," *Citizens for Responsibility & Ethics in Washington (CREW) v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014).

Under Exemption 7(A), it is "often appropriate" for an agency to use the categorical approach, which involves "grouping documents in categories and offering generic reasons for withholding the documents in each category."  *Id.* at 1098.  The categories must be "sufficiently distinct to allow a court to grasp how each category of documents, if disclosed, would interfere

7

with the investigation." *Bevis*, 801 F.2d at 1389 (internal quotation marks omitted). An agency must take three steps to invoke the categorical approach: (1) define categories "functionally," (2) "conduct a document-by-document review in order to assign documents to the proper category," and (3) "explain to the court how the release of each category would interfere with enforcement proceedings." *Id.* at 1389–90. The defined categories must "allow[] the court to trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986). And although courts may "give deference to an agency's predictive judgment of the harm that will result from disclosure of information, . . . it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so." *CREW*, 746 F.3d at 1098.

This Court previously found that FinCEN did not provide enough information to meet its burden under the categorical approach and directed that they "supplement the record by (1) confirming the status of the anticipated or pending investigations, (2) providing greater detail about how the withheld documents were assigned to the various functional categories, and (3) providing greater clarity about how the document types and functional categories set forth in the El-Hindi declaration and the *Vaughn* Index fit together and relate to the anticipated or pending law enforcement investigations identified in the El-Hindi declaration." Mem. Op. and Order at 8–9. FinCEN's two additional declarations and its two revised *Vaughn* Indexes provide the necessary additional information to show that disclosure of each category of documents could "reasonably be expected to interfere with enforcement proceedings." *See* 5 U.S.C. § 552(b)(7)(A).

The El-Hindi declaration confirms that the documents withheld under Exemption 7(A) relate to an ongoing investigation by a foreign jurisdiction. While El-Hindi notes that most of the investigations that were open at the time of the First El-Hindi Declaration—including FinCEN's Section 311 rulemaking—have concluded, he asserts that "foreign authorities have confirmed to FinCEN that foreign investigations and proceedings are still pending into the facts underlying the Section 311 rulemaking, and persons related to BPA." Third El-Hindi Decl. ¶ 20; *see also* Fourth El Hindi Decl. ¶ 4 (stating that the foreign jurisdiction investigating these cases has "repeatedly confirmed that the release of the identified documents would interfere with its ongoing proceedings"). For the purposes of Exemption 7(A), it makes no difference that disclosure would obstruct the law enforcement proceedings of a foreign jurisdiction rather than a domestic one. *See Bevis*, 801 F.2d at 1388 (upholding exemption of documents related to Salvadorian law enforcement proceeding).

The Court finds unpersuasive Lewis' argument that the foreign investigations into BPA have either concluded or been made public such that disclosure presents no risk. *See* Pl.'s Br at 17–18; 24–25; Renedo Herranz Decl., Dkt. 37-4; Jiminez Naudi Decl., Dkt. 37-5. BPA's alleged activity involved investigations in a number of jurisdictions, and BPA's knowledge that some law enforcement actions have concluded does not preclude the existence of ongoing, confidential investigations in other jurisdictions. And government declarations are entitled to a presumption of good faith. *See SafeCard*, 926 F.2d at 1200. Additionally, contrary to Lewis' suggestion, it is unnecessary that FinCEN specify where the proceeding is taking place or whom it is targeting. *See* Pl.'s Br. at 18. FinCEN need only provide "reasonably specific detail" in its affidavits to prove that investigations or proceedings are ongoing. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009); *see also Dillon v. DOJ*, 102 F. Supp. 3d 272, 290 (D.D.C. 2015)

(ruling that agency's claim of "ongoing investigations of known and suspected terrorists" satisfied Exemption 7(A)). FinCEN's assertion that the foreign investigations relate to "the facts underlying the Section 311 rulemaking, and persons related to BPA" provides enough specificity for 7(A).

FinCEN also provided sufficient detail about its functional categories to address how the disclosure of documents in each category would frustrate enforcement proceedings. FinCEN created two general categories: "investigatory materials" and "evidentiary materials," *see* Third El-Hindi Decl. ¶ 23, and divided each of those categories into subcategories, *see id*. ¶¶ 24–30. FinCEN conducted a document-by-document review in forming these categories. *See Vaughn Index*. These subcategories satisfy the functionalism requirement because they allow the Court to "trace a rational link" to the potential for interference. *See Bevis*, 801 F.2d at 1390. And in *Edmonds v. FBI*, 272 F. Supp. 2d 35 (D.D.C. 2003), this Court upheld an agency's invocation of 7(A) using identical functional categories—evidentiary and investigative materials—coupled with "a detailed discussion of the materials contained within each functional category and the reasons that disclosure would interfere with the pending investigations," *id*. at 54–55, which FinCEN has done here.

In the "investigatory materials" category, FinCEN included "records of law-enforcement methods or procedures undertaken in furtherance of the investigation, including requests for information, the results of these investigative requests, dissemination of information obtained, and correspondence about the methods and procedures employed in ongoing investigations and enforcement activities." *Id.* ¶ 25. FinCEN divided this material into two subcategories: "exchange of information with domestic law-enforcement agencies" and "exchange of information with foreign government agencies." *Id.* ¶ 25–26.

10

According to El-Hindi, releasing documents exchanged with domestic agencies in relation to a foreign investigation would allow the subject of that investigation to gain insight into "what sort of information a foreign [Financial Intelligence Unit] or foreign law-enforcement authority might be seeking from U.S. authorities through FinCEN in its capacity as a network for financial intelligence." *Id.* ¶ 25. It would allow the subject to better understand "the thought processes" of the foreign authority, the "lines of inquiry pursued, and what types of information investigators have pursued or might still be pursuing." *Id*. Similarly, prematurely disclosing information given to foreign law-enforcement authorities involving an ongoing proceeding would allow subjects to access information that may be part of their ongoing case. *Id*. ¶ 26. Releasing these documents could also chill future cooperation between FinCEN and foreign government agencies by undermining FinCEN's promises of confidentiality. *Id.*

The "evidentiary materials" category includes "records of evidence, analysis of evidence, and derivative communications discussing or otherwise incorporating evidence." *Id.* ¶ 27. FinCEN also divided this category into three subcategories: "confidential financial information," "other confidential identifying information," and "exchange of evidentiary information between FinCEN and law-enforcement agencies." *Id.* ¶ 28–30. These subcategories, too, permit the Court to assess how disclosure would impede the ongoing proceeding because they involve different types of evidentiary material in the proceeding.

Disclosing the confidential evidentiary information could reveal details about an ongoing investigation, as well as the sources of the confidential information, implicating them as potential witnesses. *Id*. ¶¶ 28–29. Disclosing the evidentiary information FinCEN exchanges would "cause significant disruption" to the ongoing proceeding and again hamper its ability to share financial intelligence with foreign authorities. *Id*. ¶ 30.

11

Courts "give deference to an agency's predictive judgment of the harm that will result from disclosure of information," *CREW*, 746 F.3d at 1098, and the D.C. Circuit has consistently upheld agencies' use of 7(A) to prevent revealing the scope and focus of ongoing proceedings, which FinCEN does here, *see, e.g. Boyd v. Crim. Div. of DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007) (exempting from disclosure "information [that] could reasonably be expected to reveal to the targets the size, scope, and direction of [the] investigation") (internal quotation marks omitted); *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 923 (exempting from disclosure information that could reveal the "progress and direction of the ongoing investigation"). FinCEN has provided sufficient detail in its *Vaughn* Indexes and the two El-Hindi declarations to demonstrate the specific risk of harm that disclosure would pose to the ongoing foreign investigation.

3. *Exemption 7(D)*

Exemption 7(D) permits agencies to withhold records compiled for law enforcement purposes to the extent that the records "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). FinCEN concedes that it only relied on the first clause—that the information would be likely to reveal the identity of a confidential source—to withhold the information. *See* Defs.' Reply at 19, Dkt. 39. The parties do not dispute that withheld documents were furnished by confidential sources. *See* Pl.'s Br. 26–29. The dispute centers on whether the information supplied by the confidential sources must be entirely withheld or whether these documents can be redacted in a way that would not reveal the identity of confidential sources. *See id*. at 28–29.

According to FinCEN, releasing any of the information in the withheld documents would "almost always yield sufficient detail to reveal the identity of the source." Third El-Hindi Decl. ¶¶ 33–34. A confidential source's information is "often singular in nature," *id.* ¶ 34, and can therefore be readily associated with the jurisdiction and source from which it came, *id.* ¶ 57. For example, if FinCEN disclosed information that a foreign financial institution provided to a foreign government, that information could be "easily traced back to the source based on inferences about the nationality or location of the financial institution or persons under investigation." *Id.* Therefore, simply redacting the portions of the documents that directly reference the confidential sources would not sufficiently protect their identities from disclosure. *See id.*

Permitting FinCEN to withhold the entirety of these documents does not mean that an agency can withhold *all* information furnished by confidential sources, regardless of whether it was provided in the course of a criminal investigation. *See* Pl.'s Reply 11–12. Exemption 7(D) "applies to all information that would tend to reveal a source's identity," *see Sarno v. DOJ*, 278 F. Supp. 3d 112, 123 (D.D.C 2017), not just to information that directly names a confidential source. FinCEN has demonstrated that, based on the specific facts at issue here, disclosing any information contained in the documents would reveal the identity of confidential sources "[b]ecause the information exchanged is so closely tied to those foreign jurisdictions and the sources maintained by FinCEN's foreign counterparts." Third El-Hindi Decl. ¶ 60. FinCEN need not disclose otherwise non-exempt information that is "inextricably intertwined" with exempt information about its confidential sources. *Bullock v. FBI*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008). FinCEN represents that it conducted a thorough review of each document and concluded that no material was reasonably segregable, *see* Third El-Hindi Decl. ¶ 97, and

agencies are entitled to a presumption that they disclosed reasonably segregable material, *see Sussman*, 494 F.3d at 1117. FinCEN has thus properly invoked Exemption 7(D).

### B. Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This includes all documents that would normally be privileged in the civil discovery context. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

FinCEN invokes the deliberative process privilege under Exemption 5 to either redact or withhold the remaining documents at issue.[3] The deliberative process privilege allows agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (internal quotation and citation omitted). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal quotation marks omitted).

---

[3] While FinCEN has invoked both the deliberative process privilege and the attorney-client privilege under Exemption 5, *see* Fourth El-Hindi Decl. ¶ 6; Third El-Hindi Decl. ¶¶ 78–80, Lewis only challenges the application of the attorney-client privilege to the extent that FinCEN withholds the documents in full. *See* Pl.'s Br. at 29 n. 17; *id*. at 41 n. 22. All the documents that FinCEN withholds in full under the attorney-client privilege are also covered by Exemptions 7(A) and 7(D). *See Vaughn* Index at 63, 75, 84, 85. Because the Court has already held that FinCEN has properly used those exemptions, it does not address the attorney-client privilege.

To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative." *Petroleum Info. Corp.*, 976 F.2d at 1434. Predecisional material is "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." *Id.* (internal quotation marks omitted). Deliberative material "reflects the give-and-take of the consultative process." *Id.* (internal quotation marks omitted). Materials withheld under the deliberative process privilege "must bear on the formulation or exercise of agency policy-oriented judgment." *Id*. at 1435 (emphasis omitted). An agency need not pinpoint a single decision to which a withheld document contributed. *Access Reports v. Department of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991). Rather, an agency may simply identify a decisionmaking process to which a withheld document contributed. *Id.* In addition, "[t]o the extent that predecisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5." *Petroleum Info. Corp.*, 976 F.2d at 1435.

1. *Documents withheld in full*

The first set of documents that FinCEN withheld in full under Exemption 5 are drafts of a document entitled "Financial Crimes Enforcement Network; Withdrawal of Notice of Proposed Rulemaking Regarding Banca Privada d'Andorra" that was eventually published in the Federal Register. *See Vaughn* Index at 50. While drafts are not presumptively privileged, *see Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004), they are "commonly found exempt under the deliberative process exemption," *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007). These drafts were predecisional because they were prepared to help FinCEN officials finalize the language in the agency's

proposed rulemaking regarding BPA. *See Vaughn* Index at 50; *Petroleum Info. Corp.*, 976 F.2d at 1434. The drafts are also deliberative because they contain comments and redline edits that "reflect[] the give-and-take of the consultative process" between FinCEN officials regarding what material the final document should include. *See Vaughn* Index at 50; *Petroleum Info. Corp.*, 976 F.2d at 1434.

Lewis contends that FinCEN may not withhold these drafts under the deliberative process privilege because FinCEN eventually adopted them as a formal policy. *See Judicial Watch*, 297 F. Supp. 2d at 261 (explaining that drafts "adopted formally or informally, as the agency position on an issue" will defeat a claim of privilege); Pl.'s Br. at 38–39. But the *Vaughn* Index notes that these documents differ from the final documents posted because they "contain comments and redline edits that convey the authors' opinions regarding that draft language." *Vaughn* Index at 50. Therefore, the draft documents were properly withheld under Exemption 5.

FinCEN also withheld several emails in full under the deliberative process privilege of Exemption 5, including "communication[s] between FinCEN officials on posting BPA comments" and "an email communication and clearance tracker between FinCEN officials on the BPA overview." *Vaughn* Index at 83; *see also* Am. *Vaughn* Index at 7. These emails are predecisional because they document intra-agency discussions about posting comments on the Section 311 rulemaking action against BPA before the comments were posted, so the officials were "still in the process of deciding what to do." *Id.* These discussions were geared toward deciding which comments FinCEN should post. *See Petroleum Info. Corp.*, 976 F.2d at 1435. The emails are also deliberative because they involve "ongoing back-and-forth" discussions about "pending issues related to the comments and how to handle them." *See Vaughn* Index at

50; *see also Petroleum Info. Corp.*, 976 F.2d at 1435. Accordingly, FinCEN properly withheld the emails relating to the BPA comments on its Section 311 action.

### 2. Redacted documents

FinCEN also redacted several documents. First, it redacted an email exchange between an official in its Office of Public Affairs and a Department of Justice official concerning a press inquiry about a press release issued by BPA discussing the Section 311 action. *See Vaughn* Index at 46. According to the *Vaughn* Index, FinCEN withheld the officials' discussions about how to respond to the reporter. *Id*. These emails are predecisional and deliberative because they involve conversations about how to formulate the agency's official response to the inquiry. *See id*.

Second, FinCEN redacted parts of an email exchange between its officials discussing plans for posting comments relating to the agency's Section 311 action against BPA. *See Vaughn* Index at 47. These documents are predecisional because they involve subordinate FinCEN officials "conveying nonfinal plans" prior to the agency's ultimate decision about which comments to post, and they are deliberative because they involve "the decision making process about what will be posted." *Id*.

Third, FinCEN redacted portions of email exchanges between Treasury officials concerning a weekly report released from Treasury's Enforcement Division. *See id.* These portions are predecisional because they contain discussions about what the Enforcement Division will include in its weekly updates and they are deliberative because they include "the authors' opinions" regarding those decisions. *Id*.

### C. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency may satisfy its segregabiltiy obligations by "(1) providing a Vaughn index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 207 (D.D.C. 2013). The segregabilty requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 250 (D.C. Cir. 1977). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Sussman*, 494 F.3d at 1117.

FinCEN has complied with its obligation to provide any "reasonably segregable" information. In each section of its *Vaughn* Index, FinCEN represents that it conducted a "thorough" document-by-document review of that set of documents and concluded that "no additional meaningful, non-exempt information" could be reasonably segregated and released. *See Vaughn* Index. El-Hindi also confirms in his sworn declaration that "no non-exempt information exists that can be reasonably segregated and released." Third El-Hindi Decl. ¶ 97.

Lewis contends that FinCEN's descriptions are inadequate because FinCEN must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent.*, 566 F.2d at 261. But the D.C. Circuit has since "relaxed" this standard, *see Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 206 (D.D.C. 2013), and FinCEN has provided a comprehensive *Vaughn* Index and multiple agency affidavits attesting that it released all segregable material, *see Loving v. DOD*, 550 F.3d 32, 41

(D.C. Cir. 2008) (holding that a description of the document in the *Vaughn* Index and an agency declaration that it released all segregable material is "sufficient for [the segregability] determination"). Lewis' speculative claim that it is "unlikely that nothing in over 900 pages of responsive material could be disclosed," *see* Pl.'s Br. at 43, similarly fails because FinCEN is entitled to a presumption that it complied with its segregability obligation, *see Sussman*, 494 F.3d at 1117. The Court therefore holds that FinCEN has provided Lewis with all "reasonably segregable" material.

### D. *In Camera* Review

A district court may in its discretion "examine the contents of" agency records in camera. 5 U.S.C. § 552(a)(4)(B); *see also Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) ("The decision to conduct an *in camera* review is committed to the broad discretion of the trial court judge." (internal quotation marks omitted)). *In camera* review is appropriate (1) when the affidavits are conclusory or "not described in sufficient detail to demonstrate that the claimed exemption applies," or (2) "if there is evidence of agency bad faith." *Carter v. Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C. Cir. 1987). A court can also consider judicial economy, the public interest, and whether the dispute centers on the actual contents of the documents. *Id*.

Lewis requests *in camera* review of the records withheld under Exemptions 5, 7(A) and 7(D). *See* Pl.'s Br. at 44. These records comprise hundreds of documents, and courts are reluctant to conduct in camera review when "examination of the requested documents would require herculean labors because of their volume." *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) (internal quotation marks omitted). Further, El-Hindi's two additional declarations, as well as the two *Vaughn* Indexes, "provide specific information sufficient to place the documents within the exemption category." *Quinon*, 86 F.3d at 1227 (internal quotation

19

marks omitted); *see also Marck v. Dep't of Health & Human Services*, 314 F. Supp. 3d 314, 329 (D.D.C. 2018) (denying request for *in camera* review because the declaration was detailed enough to satisfy FOIA exemptions). The record also lacks any evidence of bad faith by the government. *See Plunkett v. DOJ*, No. 11-cv-341, 2015 WL 5159489, at *12 (D.D.C. Sept. 1, 2015). Accordingly, the Court denies Lewis' request for *in camera* review.

## CONCLUSION

For the foregoing reasons, the Court grants FinCEN's Motion for Summary Judgment and denies Lewis's Cross Motion for Summary Judgment. A separate order accompanies this memorandum opinion.

April 3, 2020

                                                                                     _____
                                                                                     DABNEY L. FRIEDRICH
                                                                                     United States District Judge